# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NUCOR STEEL-ARKANSAS, and
NUCOR-YAMATO STEEL
COMPANY,

      Plaintiffs,

          v.

SCOTT PRUITT, in his Official Capacity
as Administrator, U.S. Environmental
Protection Agency,

      Defendant.

Civ. Case No. 14-CV-00199-KBJ

## AMICUS BRIEF OF BIG RIVER STEEL, LLC IN SUPPORT
## OF EPA'S CROSS-MOTION FOR SUMMARY JUDGMENT

MICHAEL J. MONTGOMERY
BAKER & HOSTETLER LLP
1900 East 9th Street, Suite 3200
Cleveland, Ohio 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740

MARK W. DELAQUIL
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave. NW
Washington, D.C.  20036
Telephone: 202.861.1500
Facsimile: 202.861.1783
mdelaquil@bakerlaw.com

*Attorneys for Big River Steel, LLC*

## BIG RIVER STEEL'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 26.1,

Big River Steel, LLC states as follows:

1. Big River Steel does not have a parent corporation.

2. No publicly held corporation owns 10% or more of the stock of Big River

Steel.

Dated: July 10, 2017                              /s/ Mark W. DeLaquil_____
                                                  Mark W. DeLaquil

# TABLE OF CONTENTS

Interest of Big River Steel...........................................................................................1

Introduction ...............................................................................................................1

Legal Standard...........................................................................................................2

Argument....................................................................................................................3

    I.      The Court Has Not Resolved the Question of Standing................................3

    II.    There Is No Evidentiary Record To Support Nucor's
             Claim of Injury Due to Projects Requiring PSD Permits ..............................8

Conclusion................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*3E Mobile, LLC v. Glob. Cellular, Inc.*, 121 F. Supp. 3d 106
(D.D.C. 2015) .................................................................................. 4

*Am. Library Ass'n v. FCC*, 401 F.3d 489 (D.C. Cir. 2005) ................................ 9

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ................................................ 2

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ............................... 7, 14

*Coon v. Wood*, 160 F. Supp. 3d 246 (D.D.C. 2016) ........................................ 12

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S.
167 (2000) ...................................................................................... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................... 2, 3, 6

*Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d
319 (D.D.C. 2016) ........................................................................... 9

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 839 F.
Supp. 2d 40 (D.D.C. 2012) ............................................................. 4

*New York v. EPA*, 443 F.3d 880 (D.C. Cir. 2006) ...................................... 9, 10

*Pinson v. Samuels*, 761 F.3d 1 (D.C. Cir. 2014) ............................................... 2

*Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42 (D.C. Cir. 2016) ........ 3, 4, 6, 7

*Sierra Club v. EPA*, 705 F.3d 458 (D.C. Cir. 2013) ...................................... 12

*Summers v. Earth Island Inst.*, 555 U.S. 488 (1998) ........................... 8, 11, 13

*Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235 (D.C. Cir. 2015) ............... 2, 3

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ................................................. 14

## Statutes and Regulations

40 C.F.R. Part 51 Appx. W § 4.1 ..................................................................... 13

40 C.F.R. § 50.13 ............................................................................................ 12

40 C.F.R. § 51.165 .......................................................................................... 10

40 C.F.R. § 51.166 .................................................................................... 10, 12

40 C.F.R. § 51.21 ............................................................................................ 10

Ark. Code Ann. § 8-4-318 .............................................................................. 11

Ark. Pollution Control & Ecology Comm'n Reg. 18.307 ............................... 10

**Other Authorities**

EPA, New Source Review Workshop Manual (1990) ................................................. 13, 14

Memorandum from John R. O'Connor, Acting Director,
OAQPS, EPA, to Thomas W. Devine, Director, Air and Waste
Management Division, EPA Region IV (Jan. 20, 1984) ................................................. 13

Memorandum from Stephen D. Page, Director, Office of Air
Quality Planning and Standards, to Regional Air Division
Directors, Guidance for $PM_{2.5}$ Permit Modeling (May 20, 2014) ................................ 13

## INTEREST OF BIG RIVER STEEL[1]

Big River Steel has a substantial interest in this action, as Nucor's lawsuit ultimately seeks to invalidate the air permit that allows Big River Steel to build and operate its $1.3 billion steel mill in Arkansas.  Big River Steel seeks to provide the Court with additional reasons for concluding Nucor lacks standing—including Nucor's failure to satisfy its evidentiary burden at the summary judgment stage and the speculative nature of Nucor's increment-related injuries.

## INTRODUCTION

When Nucor opposed Big River Steel's brief in support of EPA's motion to dismiss, it proclaimed that "Nucor is under no obligation to prove each of its factual allegations at this time—although it will do so in due course."  Nucor BRS Opp. Br., ECF No. 51, at 3.  "Due course" has now arrived, but Nucor has not attempted to prove its factual allegations concerning Article III Standing.  Instead, Nucor argues that the Court's decision denying EPA's motion to dismiss has definitively resolved the standing issue in its favor.  But that argument ignores the actual holding of the Court's decision and D.C. Circuit precedent obligating Nucor to prove standing as a means of assuring the Court that it has jurisdiction.  While Nucor's failure to support its claim of Article III Standing is grounds alone to deny its motion for summary

---

[1] Counsel for *amicus* certifies that no counsel for any party to this lawsuit authored this brief, in whole or in part, and no person or entity other than *amicus* or its counsel made a monetary contribution intended to fund the preparation or submission of the brief.

judgment, its decision to reverse course and decline to introduce evidence into the record may be because Nucor appears not to have applied for a PSD permit in Arkansas since it last amended its complaint and thus may be unable to adduce facts sufficient to support an imminent injury. For these reasons, the Court should grant EPA's cross-motion for summary judgment and deny Nucor's motion for summary judgment. [2]

## LEGAL STANDARD

As plaintiff, Nucor "bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). To satisfy that burden, Nucor must demonstrate "'(1) an injury in fact which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) a causal connection between the injury and the conduct complained of, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (alterations omitted).

"Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in

---

[2] Big River Steel supports the arguments that EPA has made in its response in opposition to Nucor's motion for summary judgment and cross-motion for summary judgment. For the sake of judicial economy, Big River Steel adopts those arguments.

the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Pinson v. Samuels*, 761 F.3d 1, 6 (D.C. Cir. 2014), *aff'd sub nom. Bruce v. Samuels*, 136 S. Ct. 627, 193 L. Ed. 2d 496 (2016) (quoting *Lujan*, 504 U.S. at 561)). "At the summary judgment stage of the proceedings, the companies 'can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true.'" *Swanson*, 790 F.3d at 240 (quoting *Lujan*, 504 U.S. at 561).  Moreover, a litigant that seeks injunctive relief, as Nucor does, "must show an imminent future injury" through demonstration "that there is a substantial probability of injury."  *See id.* (quotations marks and alterations omitted).

## ARGUMENT

## I.     The Court Has Not Resolved the Question of Standing

Nucor claims that the Court "resolved" "[t]he standing issue" when it denied EPA's motion to dismiss.  Nucor Mot. SJ, ECF No. 66-1, at 4.  Not so.  In deciding the motion to dismiss, the Court asked only whether Nucor had *alleged* facts sufficient establish standing.  And as is appropriate at the pleadings stage, the Court did so by "accept[ing] as true all of the factual allegations in the complaint and draw[ing] all reasonable inferences in favor of the plaintiff."  Decision at 19 (quotation marks omitted).  Needless to say, the Court never determined whether Nucor would ultimately meet its evidentiary burden for summary judgment.  *See Scenic Am., Inc. v.*

*U.S. Dep't of Transp.*, 836 F.3d 42, 48 (D.C. Cir. 2016) ("[A] court's determination that a plaintiff has established standing at the motion to dismiss stage by *alleging* sufficient facts in her pleadings is only the first step, because that finding does not obviate the court's responsibility to ensure that the plaintiff can actually *prove* those allegations when one or both parties seek summary judgment.") (emphases in original); *see also Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 40, 46 (D.D.C. 2012).

Indeed, even under the Federal Rules' "liberal pleading standards," *3E Mobile, LLC v. Glob. Cellular, Inc.*, 121 F. Supp. 3d 106, 108 (D.D.C. 2015), the Court expressed concerns about Nucor's Article III Standing. The Court only allowed the action to advance beyond the pleadings after Nucor amended its complaint twice to supplement its allegations concerning standing, and the Court considered multiple motions to dismiss, held two oral arguments on those motions, and issued a published decision. Although Nucor ultimately alleged six theories of injury in support of its claim to standing, Decision 14-16, the Court cast doubt on all but one: Nucor's theory based on the PSD increment. Decision 16-17. All but rejecting the other five, the Court characterized EPA's arguments against them as "compelling." *Id.*

On the question of the PSD increment, the Court held that consumption of the PSD increment *could* constitute a concrete, particularized injury—a matter that EPA did not dispute in principle. Decision 22-25. The Court then considered whether Nucor's Complaint plausibly alleged an imminent injury based on consumption of the

PSD increment "from two angles:  [1] the firmness of the plaintiff's future plans, and

[2] the likelihood that the challenged government action will implicate those plans."

*Id.* at 26.

Regarding the firmness of Nucor's plans, the Court credited Nucor's allegations

it will need PSD permits because it "is nearly certain" that its two mills in Arkansas

will undergo PSD review in connection with future modification projects.  Compl.

¶ 78.  In so doing, the Court assumed as true several of Nucor's factual allegations,

including "that both of its mills have previously been subject to PSD review (Compl.

¶¶ 4–5); that one of its two mills 'is currently pursuing permit modifications that may

require PSD review' (Compl. ¶ 78); and that over the past 25-30 years, its two mills

have averaged almost one ADEQ-air-permit modification per year apiece, '[m]any' of

which required PSD review (*id.*)."  Decision 27.

Regarding the likelihood that the Big River Steel project will affect those plans,

the Court credited Nucor's allegations about the project's potential impact.

Specifically, the Court found that Nucor satisfied the pleading standard by alleging

that its permit applications will be meaningfully constrained because Big River Steel

was located 20 miles upwind of Nucor's mills, in the same air quality control region,

and that particulate matter emissions from that project would reach Nucor mills and

impact overall air quality in the region.  Decision 28.  The Court reasoned that Big

River Steel's emissions could reach the significant impact area that Nucor would need

to analyze in any future PSD permit applications.  Decision 29-30.

Throughout the decision, the Court repeatedly emphasized that was only ruling on the actual issue before it: the sufficiency of Nucor's pleadings.  *See, e.g.*, Decision 3 ("[T]his Court agrees with Nucor that certain allegations in the complaint are sufficient to demonstrate **(for the purpose of the pleading stage of this litigation)** that Big River Steel's permit works a plausible and imminent injury to Nucor in the form of more stringent limitations under the PSD program.") (emphasis added); Decision 31 ("[T]his Court concludes that Nucor has adequately alleged **for the purpose of the motion-to-dismiss stage** that it faces imminent PSD-increment injury.") (emphasis added); Decision 33 ("[T]his Court concludes that, **at this early stage of the litigation, Nucor has said enough to allege** a concrete and particularized injury that is fairly traceable to the EPA's failure to timely respond to Nucor's petition.") (emphasis added).  Moreover, the Court's decision tacitly recognized that Nucor would be required to prove standing with facts later in this litigation by noting that it "must be mindful of the stage of the litigation, because 'each element [of Article III Standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'"  Decision 18-19 (quoting *Lujan*, 504 U.S. at 561).

Accordingly, the Court did not rule conclusively that Nucor has standing.  Nor would such a decision have been proper.  As the D.C. Circuit observed in *Scenic America, Inc. v. U.S. Department of Transportation*, the Court must satisfy itself of its own

jurisdiction "at the outset of *each* phase" of litigation.  836 F.3d 42, 48 (D.C. Cir. 2016) (emphasis in original).  In *Scenic*, the district court denied the government's motion to dismiss for lack of standing.  *Id.* at 47.  But the government did not raise the issue again on summary judgment, and the district court did not require the plaintiff to support its standing claims with evidentiary material.  *Id.*  The D.C. Circuit vacated the judgment, noting that "[t]he district court must assure itself of its jurisdiction before assessing a summary judgment motion on the merits." *Id.* at 48 n.2.  The D.C. Circuit went on to suggest that this Court "consider amending its local rules to provide that the plaintiff include its evidentiary basis for standing in the statement of material facts that every party is required to file either in support of, or in opposition to, a motion for summary judgment." *Id.* at 49 n.3; *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148-49 (2013) (dismissing case for lack of standing where plaintiff did not raise the issue of fact regarding standing on summary judgment).

In short, the Court did not resolve the issue of standing when it denied EPA's motion to dismiss.  And in light of the Court's obligation to assure itself that it has jurisdiction over this matter, Nucor's failure to provide the promised evidentiary support for its standing is fatal to its motion for summary judgment and constitutes grounds sufficient to enter summary judgment in EPA's favor.

## II.   There Is No Evidentiary Record To Support Nucor's Claim of Injury Due to Projects Requiring PSD Permits

Public records made available to Big River Steel indicate that Nucor has not submitted any applications for PSD permits in Arkansas since July 2015, when it filed its most recent Complaint in this matter.  Nucor's apparent failure to submit a PSD application in the two years since it alleged that it "is currently pursuing permit modifications that may require PSD review" raises substantial questions about the "firmness" of its plans to engage in construction activity that requires a PSD permit. It also casts doubt on the "likelihood" that any such activity would be impacted by Big River Steel.[3]

Firmness of Construction Plans.  Nucor cannot establish standing because nothing in the record demonstrates that it has a firm intention to engage in construction requiring a PSD permit.  To the contrary, the record shows that Nucor's plans are at most speculative, and perhaps non-existent.

To establish standing at the summary judgment stage, Nucor must introduce evidence of a "firm intention" to engage in activity that will require a PSD permit.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (1998).  As such, "'general averments,'

---

[3] Nucor also has not entered evidentiary material to support its other claimed bases of Article III Standing, but given the Court's prior observation that EPA had "compelling" legal arguments that those alleged injuries were not legally cognizable even at the pleadings stage, *see* Decision 16-17, Big River Steel incorporates by reference EPA's and its prior pleadings and submissions on those matters.  *E.g.*, EPA MTD First Complaint, ECF No. 12; EPA MTD First Amend. Compl., ECF No. 22; BRS First Amicus Br., ECF No. 35; EPA MTD Second Amend. Compl., ECF No. 43; BRS Second Amicus Br., ECF No. 46; Answer to Amend. Compl., ECF No. 64.

'conclusory allegations,' and 'speculative some day intentions' are inadequate to demonstrate injury in fact." *Am. Library Ass'n v. FCC*, 401 F.3d 489, 496 (D.C. Cir. 2005) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000)). Simply put, Nucor must show more than that it "anticipates engaging in such [activity] at some indeterminate point in the future." *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d 319, 334 (D.D.C. 2016), *aff'd sub nom. Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1 (D.C. Cir. 2017).

To determine whether any Nucor PSD construction activity was imminent, Big River Steel made several public records requests to the Arkansas Department of Environmental Quality for all Nucor's PSD permit applications in Arkansas since January 2012. Booher Decl. ¶¶ 2, 4, 6, 7 & Exs. A, C, D, E. In response to those inquiries, Arkansas returned only one PSD application, which Nucor filed in 2012. Booher Decl., Ex. B. In light of the infrequency of Nucor's PSD permit applications within this over-five-year timeframe, there is no reason to infer that an injury is imminent.

In this regard, for standing purposes, only a true "PSD review" conducted by the permitting authority in response to a PSD permit application supports a legally cognizable injury, not so-called "PSD review" conducted by Nucor in determining whether it is necessary to submit a PSD permit application. Because the definition of "change" in the PSD program is sufficiently broad that it potentially could be construed to include any activity at a source, *see, e.g., New York v. EPA*, 443 F.3d 880,

890 (D.C. Cir. 2006) (vacating regulatory safe harbor from PSD program on the basis that the only limitation on the types of changes that constitute "modifications" requiring a PSD permit are those that do not result in an emission increase), all source owners regularly engage in activity that could be characterized as "PSD review" to determine if the PSD program is applicable. The PSD increment is not part of this applicability determination process, as an existing source with a track record of emissions performance (such as both of Nucor's Arkansas mills) will instead typically consider whether the activity is excluded from PSD, as in the case of routine maintenance, 40 C.F.R. §§ 51.165(a)(1)(v)(C), 51.166(b)(2)(iii), 51.21(b)(2)(iii), or would cause a significant net emissions increase requiring a permit, 40 C.F.R. §§ 51.166(a)(7)(iv), 52.21(a)(2)(iv). But most existing source owners apply for PSD permits rarely, if ever, as Nucor's failure to apply for a PSD permit in the last two years demonstrates.

In contrast, nearly all construction activity or operational changes at a steel mill require an amendment to the source's state air permit, even modifications that "result in a trivial environmental impact." *See* Arkansas Pollution Control & Ecology Commission Reg. 18.307(C)(1)(b). Accordingly, source owners (including Nucor) regularly submit state permit amendments. But such activity is irrelevant to Article III Standing because that is not subject to the increment-consumption limits of the PSD program. Nor would the Arkansas Department of Environmental Quality have any idea where the project stood vis-à-vis the PSD increment unless the applicant made

the voluntary choice to allow such because Arkansas law generally bars the consideration of air quality dispersion modeling for state-issued air permits that are not PSD permits without the source's consent.  *See* Ark. Code Ann. § 8-4-318(b)(3). So while Nucor has obtained numerous state permit revisions for activity that is not subject to the PSD program, it has made no factual showing that this activity is limited in any way by Big River Steel's emissions.

In sum, Nucor has failed introduce evidence of a "firm intention" to engage in activity that will require a PSD permit.  *See Summers*, 555 U.S. at 496.  At the summary judgment stage, Nucor's vague references to future projects "without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that [the Supreme Court's] cases require."  *Id.* (quotation marks omitted) (emphasis in original).

<u>Likelihood of Interference from the Big River Steel Facility</u>.  Even if Nucor did apply for a PSD permit, the Court could not reasonably infer that any PSD increment consumed by Big River Steel would be implicated for two reasons.  First, the Court cannot presume that Nucor's project would emit pollutants with ambient impacts such that the project would consume PSD increment.  Second, the Court cannot presume that if the project did so, the significant impact area of those emissions would overlap with areas where Big River Steel's emissions consume PSD increment.

The Court cannot presume that Nucor's project would consume PSD increment of relevant pollutants because, as Nucor's 2012 PSD permit application

shows, not all projects do.  For that application, Nucor determined that any increase

in particulate matter would lead to an ambient increase less than the applicable

significant impact levels, so it did not even consider the PSD increments applicable to

particulate matter.[4]  Booher Decl., Ex. B.  The same principle follows for all other

pollutants with applicable PSD increments.  At the summary judgment stage, the

Court cannot presume that the unidentified projects will consume PSD increment at

all, or will do so with respect to the same substances for which Big River Steel has

consumed PSD increment.  *See Coon v. Wood*, 160 F. Supp. 3d 246, 250 (D.D.C. 2016)

("[A]t summary judgment a court will not presume the missing facts necessary to

establish an element of standing.") (quotation marks omitted).

Even if Nucor's unidentified project did consume PSD increment, Big River

Steel's emissions could only limit the available increment in a manner that impacts

Nucor's project if there is an overlap of emissions, the magnitude of which impacts

Nucor's project.  Thus, the importance of *location* in determining whether a plaintiff

---

[4] Contrary to suggestions Nucor made earlier in this case, Nucor BRS Opp., ECF No. 51, at 5-6 n.29, the D.C. Circuit's decision in *Sierra Club v. EPA*, 705 F.3d 458, 463-64 (D.C. Cir. 2013), did not eliminate sources' abilities to employ significant impact levels for $PM_{2.5}$ in source impact analyses.  Instead, the D.C. Circuit vacated and remanded the $PM_{2.5}$ significant impact levels that it had codified at 40 C.F.R. §§ 50.13(c) and 51.166(k)(2) at EPA's request because the regulations, as codified in the Code of Federal Regulations, were flawed as applied to areas where baseline pollutant concentrations approached the NAAQS.  The D.C. Circuit expressly refused to rule on the question of whether EPA has authority to promulgate significant impact levels, *see Sierra Club*, 705 F.3d at 464, and EPA's regulatory guidance for $PM_{2.5}$ increment modeling continues to allow the use of significant impact levels in source impact analyses for $PM_{2.5}$.

has suffered a legally cognizable injury for Article III Standing is a recurring feature of

the case law on the subject.  For example, in *Summers v. Earth Island Institute*, 555 U.S.

488, 495-96 (1998), the Supreme Court held that at the summary judgment stage, the

plaintiff challenging a regulatory exemption applicable to certain timber sales from

Forest Service land failed to establish standing because its affiant did not aver that he

intended to visit Forest Service land that could be affected by the regulation.

Given that increment consumption is considered on a spatial basis,[5] the PSD

increment available to Nucor would only be limited by Big River Steel's emissions if

the significant impact area of Nucor's emissions overlapped with an area in which Big

River Steel's emissions consumed the PSD increment.  *See* Draft New Source Review

Workshop Manual ("NSRWM"), at C.35.[6]  At the evidentiary stage, the Court simply

cannot presume impact from this distance, particularly because it approaches the 50

kilometer limit beyond which AERMOD, the air quality dispersion model that EPA

directs PSD permit applicants to use to determine consumption of the particulate

matter PSD increment,[7] becomes unreliable.  *See* 40 C.F.R. Part 51 Appx. W § 4.1(c).[8]

---

[5] *See, e.g.*, Memorandum from John R. O'Connor, Acting Director, OAQPS, EPA, to Thomas W. Devine, Director, Air and Waste Management Division, EPA Region IV (Jan. 20, 1984), *available at* https://www.epa.gov/sites/production/files/2015-07/documents/clculatn.pdf.

[6] *Available at* https://www.epa.gov/nsr/new-source-review-publications.

[7] *See, e.g.*, Memorandum from Stephen D. Page, Director, Office of Air Quality Planning and Standards, to Regional Air Division Directors, Guidance for $PM_{2.5}$ Permit Modeling (May 20, 2014), at vii, *available at*

And even if there is overlap, Big River Steel's emissions would not constrain Nucor's

project in any way if there were ample increment remaining.  Therefore, while Nucor's

allegations may have been sufficient at the pleadings stage, its failure to introduce

actual evidence of an imminent project whose emissions would overlap with Big River

Steel's emissions in a manner that is actually constrained by those emissions is fatal to

its Article III Standing.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)

("Thus, we have repeatedly reiterated that 'threatened injury must be *certainly impending*

to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not

sufficient.") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphases in

original).

---

https://www3.epa.gov/scram001/guidance/guide/Guidance_for_PM25_Permit_Mo
deling.pdf.

[8] The Court's decision should not be read to imply that the significant impact area that
Nucor would need to analyze if it actually filed a PSD application would be a circular
area that is centered on Nucor's mill.  Decision 30 (citing NSRWM at C.26).  What
the New Source Review Workshop Manual actually states is that the "'impact area' is a
circular area with a radius extending from the source to (1) the most distant point
where approved dispersion modeling predicts a significant ambient impact will occur,
or (2) a modeling receptor distance of 50 km, *whichever is less*."  NSRWM at C.26
(emphasis added).  Thus, the impact area to be assessed could be well less than 50
kilometers.  The "significant impact area" is smaller still, and the New Source Review
Workshop Manual notes that it "[u]sually . . . does not have a continuous, smooth
border" but may instead be "comprised of pockets of significant impact separated by
pockets of insignificant impact."  *Id.*

## CONCLUSION

Nucor's alleged injuries are neither plausible nor sufficiently concrete to establish standing.  Accordingly, EPA's Cross-Motion for Summary Judgment should be granted, and Nucor's Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ Mark W. DeLaquil

| | |
|---|---|
| MICHAEL J. MONTGOMERY | MARK W. DELAQUIL |
| BAKER & HOSTETLER LLP | BAKER & HOSTETLER LLP |
| 1900 East 9th Street, Suite 3200 | Washington Square, Suite 1100 |
| Cleveland, Ohio 44114 | 1050 Connecticut Ave. NW |
| Telephone: 216.621.0200 | Washington, D.C.  20036 |
| Facsimile: 216.696.0740 | Telephone: 202.861.1500 |
| | Facsimile: 202.861.1783 |
| | mdelaquil@bakerlaw.com |

*Attorneys for Big River Steel, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on July 10, 2017.

Notice of this filing will be sent to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.


/s/ Mark W. DeLaquil
Mark W. DeLaquil